HAGENS BERMAN SOBOL SHAPIRO LLP
Abby R. Wolf (SBN 313049)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email: abbyw@hbsslaw.com

Steve W. Berman (*pro hac vice forthcoming*)
Jerrod C. Patterson (*pro hac vice forthcoming*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com
Email: jerrodp@hbsslaw.com

*Attorneys for Plaintiffs*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND WANG, DEVON HOLT and JERROD HUNTER NICHOLS, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>       v.<br><br>FUTURE MOTION, INC.,<br><br>                              Defendant. | CASE NO. _____<br><br>CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II. PARTIES ...............................................................................................................3

    A.  Plaintiffs ........................................................................................................3

        1.  Plaintiff Raymond Wang ...................................................................3

        2.  Plaintiff Devon Holt .........................................................................4

        3.  Plaintiff Jerrod Hunter Nichols ........................................................5

    B.  Defendant Future Motion, Inc. ......................................................................5

III. VENUE AND JURISDICTION ............................................................................6

IV. FACTUAL ALLEGATIONS .................................................................................7

    A.  The Nose-Dive Defect ...................................................................................7

    B.  FM Promotes the Onewheel as a Harmless "Toy" .....................................10

    C.  FM Failed to Adequately Warn Riders of the Danger Risks .......................12

V.  TOLLING OF THE STATUTE OF LIMITATIONS ..........................................13

VI. CLASS ACTION ALLEGATIONS .....................................................................15

VII. CAUSES OF ACTION ........................................................................................18

    A.  Claims Brought on Behalf of the Nationwide Class ...................................18

COUNT I VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.* THE MAGNUSON-MOSS
    WARRANTY ACT ..............................................................................................18

COUNT II BREACH OF CONTRACT (COMMON LAW)........................................20

    B.  Claims Brought on Behalf of the California Subclass.................................21

COUNT III VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
    (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)...............................................21

COUNT IV VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
    ("CLRA") (CAL. CIV. CODE § 1750, *ET SEQ.*).................................................23

COUNT V BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
    (CAL. COM. CODE §§ 2314 AND 10212)...........................................................27

COUNT VI BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
    (CAL. CIV. CODE § 1791, *ET SEQ.*).................................................................29

C.    Claims Brought on Behalf of the Florida Subclass. ...................................................30

COUNT VII VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
    TRADE PRACTICES ACT ("FDUTPA"), (FLA. STAT. ANN. § 501.201,
    *ET SEQ.*)..............................................................................................................30

COUNT VIII UNJUST ENRICHMENT .......................................................................34

COUNT IX BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
    (FLA. STAT. ANN. §§ 672.314 AND 680.212)....................................................35

PRAYER FOR RELIEF ................................................................................................36

DEMAND FOR JURY TRIAL .....................................................................................37

1    RAYMOND WANG, DEVON HOLT and JERROD HUNTER NICHOLS, individually and

2    on behalf of all others similarly situated, file this Class Action Complaint against Defendant Future

3    Motion, Inc. ("FM"). This lawsuit is based upon the investigation of counsel and the investigation of

4    experts with relevant education and experience. In support thereof, Plaintiffs state as follows:

5    **I.    INTRODUCTION**

6    1.    Plaintiffs bring this civil action on behalf of all class members to recover damages

7    suffered as a result of a defective "Onewheel" product, an electronic skateboard designed,

8    manufactured, marketed, distributed, and sold by Defendant Future Motion, Inc. ("FM"). The Onewheel

9    electronic skateboard is defective and unreasonably dangerous under California and Florida law.

10    2.    The Onewheel board ("Board") is a self-balancing, battery-powered, one-wheeled

11    transportation device that is often described as an electronic skateboard. The product was and is

12    designed, developed, manufactured, produced, distributed, marketed, and sold by Defendant FM.

13    Upon information and belief, FM developed and designed the subsystems that power the Onewheel,

14    including motors, power electronics, battery modules, and smartphone applications ("apps"). Below is

15    a picture of a Onewheel:



23    3.    Operation of the Board is controlled and/or monitored, in part, by an app installed on

24    users' smartphones. The Onewheel app allows users to view their total miles, battery life, speed, and

25    other information.

26    4.    One of Onewheel's key features (and its most dangerous and unpredictable feature) is

27    that it will provide the rider with "pushback," or physical resistance, when approaching the device's

limits during use. This pushback feature is allegedly designed as a warning to riders to avoid a dangerous situation, like excessive speeds, low battery power, or overcharging. Often, however, instead of or in addition to pushback, the Onewheel will simply shut off and nosedive abruptly, resulting in the rider being catapulted off the device (the "Nose-Dive Defect").

5.     This defect has needlessly led to severe injuries, and at least three deaths. It has caused multiple broken bones, road rashes, cuts, and bruises, all because of a design flaw that was easily fixable. According to analysis conducted by retained experts, the Onewheel could have easily been designed to emit a warning signal (through a warning light, or auditory beep or tone) in the event of excessive speed, overcharging, or low battery. Or it could have been designed to simply slow down in these situations. Instead, the Onewheel skateboards were designed to abruptly stop and/or nosedive, at considerable risk to the rider.

6.     Even as the Nose-Dive Defect presents a serious safety risk to its riders, FM deliberately markets the Boards based on their ease of use. For example, its website promotes a testimonial from a rider that the Board is "***The most fun toy that I've ever owned***."[1] Its website also features the following graphic, assuring consumers that "100%" of the public can ride Onewheel:[2]



---

[1] Unless otherwise indicated, all references to Onewheel's internet advertising is available at www.onewheel.com.

[2] https://onewheel.com/pages/support-videos.

7.     This is obviously false and misleading: toys don't generally have the capacity to maim or kill their users. And at no point did FM disclose the Nose-Dive Defect to the consumer. No plaintiff or consumer would have purchased the Onewheel if they had known about this material defect, or would not have paid as much for them. Plaintiff accordingly brings this case on behalf of the Class to seek compensation, costs, and expenses caused by this defect.

## II.     PARTIES

**A.     Plaintiffs**

**1.     Plaintiff Raymond Wang**

8.     Plaintiff Raymond Wang is and was throughout the events pleaded herein a citizen of the State of California, and domiciled in San Mateo, California. On or about October 30, 2018, Plaintiff purchased a used Onewheel Plus from a private seller on Facebook from his home in San Mateo, California. Plaintiff rode his Onewheel frequently, and (until the incident described below) felt comfortable using it.

9.     Approximately one year later, Plaintiff was riding his Onewheel down the street, not feeling any pushback, when the board suddenly shut down and nosedived into the payment. Plaintiff was thrown off the Board and rolled into the street. Fortunately, there were no vehicles, but Plaintiff suffered scrapes on his hands and knees, and he ripped his jeans.

10.     Based on this incident, Plaintiff no longer felt safe on the Board. Soon after the accident, he sold the Board on Facebook.

11.     Prior to his purchase, Plaintiff had been looking for an electronic skateboard that was fun to ride, but that was also durable, reliable, and reasonably safe to operate. Plaintiff saw and recalled FM's advertisements through all forms of media. None of the advertising that Plaintiff reviewed or saw contained a disclosure about the Nose-Dive Defect. Had FM made this disclosure, from his research Plaintiff would have received this disclosure, and he would not have purchased the Onewheel or would have paid less for it. There is a substantial difference in the market value of the device promised by FM and the market value received by Plaintiff; thus, Plaintiff did not receive the benefit of the bargain, but received less than what was bargained for.

**2.    Plaintiff Devon Holt**

12.    Plaintiff Devon Holt is and was throughout the events pleaded herein a citizen of the State of California, and domiciled in La Mesa, California. Plaintiff has purchased four boards, all online from Onewheel in La Mesa, CA, as follows:

| Board Type | Date of purchase | Status of Board |
|---|---|---|
| Original Onewheel | April 2015 | Sold in June 2015 |
| Onewheel XR | July 2016 | Sold in November 2016 |
| Pint | September 2019 | Still owns board |
| GT | November 2021 | Still owns board |

13.    With the original Onewheel board, Plaintiff sold the Board because it continued to go "nose-up," and the mileage and speed limits on the Board were low. When Plaintiff owned the Onewheel XR, he had to turn it in for service on a couple of occasions because it was having battery problems and would not turn on. Plaintiff provided the Pint to his wife for her use, but on one occasion, she experienced a sudden shut-down when riding on the beach. Fortunately for her, she landed in the sand and was uninjured.

14.    But on April 26, 2022, Plaintiff was riding his GT to work, which was about 20 miles away. The GT board's range was supposed to be 26-27 miles. A mile away from work, he stopped at a red light and checked his battery gauge, which indicated that he had 13% battery remaining. Based on his experience, Plaintiff believed that he should have at least two more miles with that level of power. But, 10 seconds after starting up after the light, the board completely and suddenly shut down, catapulting Plaintiff onto the street. Plaintiff went to the hospital with his injuries, which included torn hands, and bruised shoulder, ribs, pelvis, and wrist, and a separated AC joint in his shoulder.

15.    Prior to his purchase, Plaintiff had been looking for an electronic skateboard that was fun to ride, but that was also durable, reliable, and reasonably safe to operate. Plaintiff saw and recalled FM's advertisements through all forms of media. None of the advertising that Plaintiff reviewed or saw contained a disclosure about the Nose-Dive Defect. Had FM made this disclosure, from his

research Plaintiff would have received this disclosure, and he would not have purchased the Onewheel or would have paid less for it. There is a substantial difference in the market value of the device promised by FM and the market value received by Plaintiff; thus, Plaintiff did not receive the benefit of the bargain, but received less than what was bargained for.

### 3. Plaintiff Jerrod Hunter Nichols

16.    Plaintiff Jerrod Hunter Nichols is and was throughout the events pleaded herein a citizen of the State of Florida, and domiciled in Edgewater, Florida. In or around October 8, 2020, Plaintiff purchased a Onewheel Pint from a Future Motion-authorized retailer in Florida. Plaintiff rode his Onewheel frequently, and (until the incident described below) felt comfortable using it.

17.    On October 29, 2020, Plaintiff was riding his Onewheel at approximately 12 miles per hour, not feeling any pushback, when the board suddenly shut down and nosedived into the payment. Plaintiff was thrown off the Board and rolled into the street. Fortunately, there were no vehicles, but Plaintiff's left arm was broken in two places, requiring hospitalization.

18.    Based on this incident, Plaintiff no longer felt safe on the Board.

19.    Prior to his purchase, Plaintiff had been looking for an electronic skateboard that was fun to ride, but that was also durable, reliable, and reasonably safe to operate. Plaintiff saw and recalled FM's advertisements through all forms of media. None of the advertising that Plaintiff reviewed or saw contained a disclosure about the Nose-Dive Defect. Had FM made this disclosure, from his research Plaintiff would have received this disclosure, and he would not have purchased the Onewheel or would have paid less for it. There is a substantial difference in the market value of the device promised by FM and the market value received by Plaintiff; thus, Plaintiff did not receive the benefit of the bargain, but received less than what was bargained for.

### B. Defendant Future Motion, Inc.

20.    Future Motion, Inc. is a privately held company incorporated in Delaware and headquartered in Santa Cruz, California. Future Motion sells its Onewheel products through its website and numerous dealers throughout the United States, including in California and Florida, with dozens of dealers in this District.

### III.     VENUE AND JURISDICTION

21.     This Court also has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1332(d). Subject matter jurisdiction arises under the Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, *et seq.* This Court also has jurisdiction over the instant matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, which vest original jurisdiction in the district courts of the United States for any multi-state class action where the aggregate amount in controversy exceeds $5 million and where the citizenship of any member of the class of plaintiffs is different from that of any defendant. The $5 million amount-in-controversy and diverse citizenship requirements of CAFA are satisfied in this case. This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

22.     FM designed, manufactured, distributed, and sold the Onewheel Boards that form the basis of this Complaint (the "Subject Onewheel") to Plaintiffs.

23.     Defendant FM may be served with process by serving its registered agent, 1505 Corporation, 2804 Gateway Oaks Dr., Suite 100, Sacramento, CA.

24.     This Court has personal jurisdiction over FM by virtue of its transacting and doing business in this District and because FM is registered to do business in California. FM has transacted and done business in the State of California and in this District and has engaged in statutory violations and common law tortious conduct in California and in this District.

25.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is proper pursuant to 18 U.S.C. § 1965(a) & (b) because FM transacts affairs in this District, and the ends of justice require it. Venue is also proper in this District under 28 U.S.C. § 1391(b)(1) because FM resides in this judicial District for venue purposes.

### IV.    FACTUAL ALLEGATIONS

**A.    The Nose-Dive Defect**

26.    As described above, the Onewheel skateboard produces "pushback" when approaching the device's limits during use. But the harder the device works to maintain operations, the less the Onewheel is able to assist the rider in balancing. Once the motor's resources reach a critical point, the motor's normal ability to help the rider balance is diminished, and the rider will experience an unexpected nosedive. Often, this will feel to the rider like the motor suddenly cut out or shut down. Different factors impact when and what will cause the Onewheel to shutdown and nosedive, including the rider's weight, tire pressure, wind direction, battery level, rider stance, and the grade of incline or decline. Thus, it is impossible to predict exactly when a nosedive will occur or what will cause it to occur.

27.    The primary cause of "pushback" nosediving is velocity. When experiencing velocity pushback, the rider will feel the nose of the Board rise to various degrees when a certain velocity is reached. Often, velocity pushback occurs at a speed lower than that of the maximum due to the above-mentioned factors.

28.    Pushback and nosedives also occur on inclines and declines, purportedly to alert the rider that the motor is on the verge of becoming overworked. The problem with this form of pushback, however, is that it is difficult for the rider to discern whether the rider is actually feeling pushback, or alternatively whether it is the natural resistance caused by the incline/decline. While ascending hills, riders are already pressing against the nose and the grade of the hill to ascend, and therefore may not discern pushback.

29.    While descending, a rider may not feel pushback because his/her weight is likely already on the tail to control speed. Pushback in such situations will likely result in a sudden nosedive or tailspin, especially if the rider is unaware that the Board is giving them pushback. Again, the result will be that the rider feels the Board suddenly shut down during operation.

30.    Another form of pushback occurs when the Onewheel is nearing battery depletion. This pushback purportedly alerts riders by elevating the nose dramatically. When the Onewheel purportedly

senses that the batteries are about to be damaged by over-depletion, the Board will shut off entirely, leaving the rider to suddenly and unexpectedly recalibrate his/her balance, often resulting in the rider being thrown from the Board.

31.     Yet another form of pushback is referred to as regeneration pushback. One way that the Onewheel recharges its battery is to collect kinetic energy when going down a decline and to reserve this power in the battery. However, this may result in the battery becoming overcharged, which would damage the battery. FM purportedly "addressed" this problem by designing the Board to suddenly and unexpectedly shut down to prevent battery damage, at the expense of rider safety. Instead of allowing the battery to overcharge, prior to regeneration-related damage to the battery, the Onewheel will shut down. The same problems in discerning pushback while ascending/descending also occur in this situation.

32.     Another common cause of nosedives is acceleration. If a rider attempts to accelerate quickly, the motor may not support the sudden weight and force on it and the nose will suddenly drop. Yet, FM advertises its Onewheel's ability to accelerate quickly, even from a complete stop. Such acceleration nosedives can happen at any speed, even from a dead stop, and the rider will feel as though the motor has suddenly cut out or shut off. "Tail-slides" can also occur when the rider shifts his/her weight onto the back of the Board and thereby overwhelms the motor. In that case, the tail of the Board will suddenly drop and slide on the ground, causing the rider to become instantly unbalanced.

33.     Not only is it prohibitively difficult to determine when nosedives/tailspins/shut-offs will occur, but the result of such unexpected and undiscernible events almost invariably cause the rider to be ejected or fall from the Board, often resulting in significant injuries. A Onewheel nosedive or shut-off is not a mild event as it might be with any other type of vehicle. The front of the Board violently slams into the ground and the rider is thrown forward, all without warning.

34.     News articles report that the Nose-Dive Defect has led to serious injuries, including death. One Texas man lost his life when, according to his counsel's website, "he experienced a sudden stop while using the skateboard. This sudden stop feature, related to the 'pushback' of the unit's safety

system, is built into the scooter's mechanics. This built-in safety feature is believed to be a defective feature for these types of scooters and is thought to be the reason that the scooter made a hard stop."[3]

35.    In another posting on a separate law firm website chronicling the injuries and deaths caused by the Nose-Dive Defect, the posting explains that "[u]nlike taking a spill off of a traditional four-wheeled skateboard, these riders say they didn't just fall off of the Onewheel. Instead, they claim that when the front of the board crashed downward, it forcefully propelled them forward, into the ground. If a Onewheel accident were to cause the rider to hit the ground headfirst, it may put them at risk of concussions and traumatic brain injuries, or they may land hard enough on their forward-leaning hand or arm to fracture bones."[4]

36.    According to another article on the internet ("jdsupra.com"), at least three wrongful death lawsuits have been filed as of July 2021 against FM related to the Nose-Dive Defect. *Id.* Another article identifies a fourth wrongful death lawsuit, stemming from a nose-diving incident in December 2021 in Colorado.[5]

37.    The Nose-Dive Defect has been the subject of complaints online as well. About three years ago, one user on the Reddit website posted the following on Onewheel's subreddit: "I was riding uphill for 2 seconds and going straight afterward. And it suddenly stopped and threw me off. It was 16 mph and I got a big bruise on my elbow. Can someone help me explain for [sic] this situation."[6]

38.    Another user responded as follows (*id.*): "I just had a bad fall today in a similar situation (just came back from ER) was going close to full speed on flat pavement, with 65% battery on a Pint XR (bought it two days ago)[.] The board stopped all of a sudden, went nose down and i flew and stumbled on the pavement, dislocated my shoulder and other bruises."

---

[3] https://www.pintas.com/blog/electric-onewheel-skateboard-shuts-off-suddenly-kills-texas-man/.

[4] https://www.jdsupra.com/legalnews/onewheel-skateboard-injury-lawsuit-7316679/.

[5] https://www.vaildaily.com/news/eagle-valley/lawsuit-claims-onewheels-failure-to-warn-is-to-blame-for-eagle-county-mans-death/.

[6] https://www.reddit.com/r/onewheel/comments/cnhi7n/onewheel_just_suddenly_stop_while_riding/.

**B.      FM Promotes the Onewheel as a Harmless "Toy"**

39.      FM promotes itself as being "IN THE BUSINESS OF MAKING THE FUTURE RAD." (https://onewheel.com/pages/about-us). A promotional video on FM's website states that the Onewheel was designed to make riders forget that "there are thousands of calculations happening per second to keep you perfect." The same video depicts the Onewheel device being operated in concrete drainage basins, through standing water, on an open highway (with cars approaching), across dirt paths, on the beach, through wooded areas, across fallen logs, and on and off the sidewalk. Onewheel-sponsored videos show users riding both with and without helmets.

40.      FM's website promotes three models, which it describes as "THE PERFECT RIDE FOR EVERY RIDER": a "pint" model, a "pint x" model," and a "GT model, with a listed price of $1,050, $1,400, and $2.200, respectively.

41.      The Onewheel skateboards are promoted as follows on FM's website:

- "RIDING IN MINUTES: Stick the landing. Pint features Simplestop dismount technology, enabling new riders to learn to ride quickly and feel confident."

- "This little ripper hits the sweet spot between price, performance, and practicality."

- "'Pint' is pure joy. . . . It has a zippy, playful, and responsive ride feel which pairs well with coffee runs, driveway shenanigans, and momentary escapes from reality."

42.      The website contains testimonials from purported owners of the Onewheel skateboard. Among these testimonials are statements from "Matteo V." that it's the "***The most fun toy that I've ever owned***."[7] Additional testimonials are as follows:

- "Ryan V." stated, "Loving the board! First go at one wheeling, never skateboarded before. Easy to learn and extremely fun. We'll [sic] built/engineered…"

- "Ray R." stated "A SENIOR CITIZEN ZIPPING AROUND TOWN. I am enjoying my one wheel pint it is an awesome ride. I'm 64 years old and been spinning around town! Awesome fun!!!"

---

[7] All of these statements scroll across the screen at www.onewheel.com.

- "Jessica W." said, "Day 2 Cruising. I love it. It's so cool I thought it was going to take several days to learn to rides [sic]. I was cruising around town by day 2…"

- "David H. stated, "My PINT is simply outstanding! What a concept. I simply can't get enough time to ride it and take different adventures riding it…"

- "Robert K." stated, "Best new hobby. Got my Onewheel begging [sic] of oct and so far love it can't wait for the warm weather."

- "Jamaal G." stated, "Heavenly butter. I am totally addicted & it's been only 3 weeks. I love my pint & it's [sic] carving ability."

43.     The second listed "FAQ" on FM's website asks, "Are Onewheels difficult to ride?" Posted response: "Nope! Anyone can ride Onewheel with a little instruction and practice. Onewheel is packed with technology that actively helps to keep you balance . . . . Tens of thousands of people of all ages and skill levels have learned to ride and we know you can do it too. Don't believe us? Watch us demo a stranger or check out 86 year old, Shreddin Eddie."[8] The phrase "Shreddin Eddie" is a link to a YouTube video featuring a group of senior citizens (some in wheelchairs) cheering on an elderly gentlemen on a Onewheel, with a younger person prompting him with, "it's a little easier than you thought, huh?"[9]

44.     Another FAQ asks, "What's the maximum age to ride Onewheel?" Posted response: "There is none! We have riders of all ages and it is never too late to start riding a Onewheel. Don't believe us? Check out 86 year old, Shreddin Eddie."

45.     Another FAQ asks, "Do Onewheels need regular maintenance?" Posted response: "Nope! They're built like tanks."

---

[8] https://onewheel.com/pages/faq.

[9] https://www.youtube.com/watch?v=5EGcl-27buw&t=75s.

**C.      FM Failed to Adequately Warn Riders of the Danger Risks**

46.    FM's Owner's Manual fails to adequately warn users of the risks of the Nose-Dive Defect. Among the deficiencies of the Owner's Manual are the following:[10]

- The cover page does not include any indication that the owner's manual contains important safety information (p. 18).

- Page 2 contains illustrated pictures demonstrating how to ride on the board – a quick-start tutorial. There are no safety warnings that precede this quick start tutorial, which is advisable to increase the possibility that the user will read them.

  o Page 2 also has a bullet under one picture that says "Always wear a helmet," but it is presented in regular type, and not highlighted as a "Warning" or something similar.

  o There is also no reference to the need for other protective equipment, such as wrist guards.

- Page 3 states "Please read [the manual] before you take your first ride and keep it for reference." But this language is overshadowed by the all-caps exhortation above it **"WELCOME TO THE REVOLUTION!"** and below it "GETTING THERE IS MORE THAN HALF THE FUN!"

- P. 21, under the blue-bolded all-caps header "AN INCREDIBLE RIDE," it states "Quite simply the most beautiful riding experience on the planet. . . . . So easy grandpa can do it. . . Onewheel is designed to be intuitive. Anyone can learn the basics in just a few minutes." By describing the experience as being "intuitive," FM is downplaying its own safety and user recommendations.

- Pages 28-33 describe the "push back" function described above, but critically does not explain how the push back function is a warning signal that precedes the Nose-

---

[10] These deficiencies are based on the Manufacturer's Guide to Developing Consumer Production Instructions, published by the U.S. Consumer Product Safety Commission in 2003. References to this Guide are in parenthesis below.

Dive Defect. **At no point does the Owner's Manual identify push back as a warning signal.**

 o The "push back" feature also is used to signal multiple completely distinct conditions: excessive speed, overcharging, low battery, or the user may have inadvertently shifted her weight onto her back foot.

47. The cumulative effect of the Owner's Manual is to deemphasize the legitimate safety risks of the Boards in favor of emphasizing their ease of use. Upon information and belief, this was a deliberate attempt by FM to market and appeal to as wide of a spectrum of riders as possible at the expense of safety.

48. In addition to the inadequate warnings the Owner's Manual, there is no auditory or visual signals to alert the reader to the hazardous system. These are basic steps that FM did not take, despite the fact that users have an App that tracks their movements and allows them to customize the settings of the Boards. Nor is there any training model that could have been installed on the app, to allow riders to experience push back in a safe and controlled environment.

## V. TOLLING OF THE STATUTE OF LIMITATIONS

49. As of the date of this Complaint, Defendant continues to market the Onewheel based on its ease of use, control, and versatility in all conditions, despite its knowledge that its Onewheel skateboards are defective and unreasonably dangerous. Defendant still has not disclosed and continues to conceal that the Onewheel skateboards are defective and unreasonably dangerous.

50. Plaintiffs had no way of knowing about Defendant's wrongful and deceptive conduct with respect to the defective Onewheel skateboards.

51. With respect to customers who have not yet experienced the Nose-Dive Defect, Plaintiffs and Class members did not discover and could not reasonably have discovered prior to purchase that their Onewheel skateboards are defective and unreasonably dangerous, including that their Onewheel skateboard may abruptly nose-dive or stop running, or that, as a result of the foregoing, they overpaid for their Onewheel skateboards, the value of their Onewheel skateboards is diminished, and/or their Onewheel skateboards will require costly modification to fix the Nose-Dive Defect, and

that any such modifications will impair other qualities of the Onewheel skateboard that formed a material part of the bargain between the parties in the purchase of the Onewheel skateboards by Plaintiffs and Class members.

52.     With respect to Onewheel skateboards that have experienced the Nose-Dive Defect prior to the filing of this Complaint, Plaintiffs and Class members did not discover and could not reasonably have discovered that the nose-diving/sudden-stop condition of their Onewheel skateboards was due to a defect known to Defendant.

53.     Within the period of any applicable statutes of limitation or repose, Plaintiff and members of the proposed class could not have discovered through the exercise of reasonable diligence that Defendant was concealing the conduct complained of herein and misrepresenting and concealing the defective nature of the Onewheel skateboard.

54.     Plaintiff and Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendant did not report information within its knowledge to consumers, dealers or relevant authorities; nor would a reasonable and diligent investigation have disclosed that Defendant was aware of the non-conforming and defective nature of the Onewheel skateboards. Plaintiff only learned of the defective nature of the Onewheel skateboards and of Defendant's decision to design and sell such unfit defective devices only shortly before this action was filed.

55.     All applicable statutes of limitation and repose have also been tolled by Defendant's knowing, active, and fraudulent concealment, and denial of the facts alleged herein throughout the time period relevant to this action.

56.     Defendant was under a continuous duty to disclose to Plaintiff and Class members the true character, quality, risk, and nature of the durability and performance of the Onewheel skateboards. Instead, Defendant knowingly, affirmatively, and actively concealed or recklessly disregarded the foregoing facts. As a result, Defendant is estopped from relying on any statutes of limitation or repose as a defense in this action.

57.     For the foregoing reasons, all applicable statutes of limitation and repose have been tolled by operation of the discovery rule and by Defendant's fraudulent concealment with respect to all claims against Defendant; and Defendant is estopped from asserting any such defenses in this action.

## VI.    CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of the following classes:

> **Nationwide Class:** All persons or entities who purchased a Onewheel electronic skateboard.
>
> **California Subclass:** All persons or entities who purchased a Onewheel electronic skateboard in the State of California.
>
> **Florida Subclass**: All persons or entities who purchased a Onewheel electronic skateboard in the State of Florida.

59.     Plaintiffs assert claims under the laws of each state set forth below.

60.     Excluded from the Class and State-specific subclasses are individuals who have personal injury claims resulting from the Nose-Dive Defect. Also excluded from the Class and State-specific subclasses are Defendant and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any entity in which Defendant has a controlling interest. In addition, governmental entities and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff are excluded from the Class and State-specific subclasses. Plaintiffs reserve the right to revise the Class definitions based upon information learned through discovery.

61.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

62.     The Class Representatives are asserting claims that are typical of claims of the Class and State-specific subclasses, and they will fairly and adequately represent and protect the interests of the Class and State-specific subclasses in that they have no interests antagonistic to those of the putative Class and State-specific subclasses members.

63.    The amount of damages suffered by each individual member of the Class, in light of the expense and burden of individual litigation, would make it difficult or impossible for individual Class members to redress the wrongs done to them. Plaintiffs and Class members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct. Absent a class action, Defendant will likely not have to compensate victims for Defendant's wrongdoings and unlawful acts or omissions, and will continue to commit the same kinds of wrongful and unlawful acts or omissions in the future.

64.    **Numerosity under Federal Rule of Civil Procedure 23(a)(1):** The Class and State-specific subclasses members are so numerous that individual joinder of all of their members is impracticable. Due to the nature of the trade and commerce involved, Plaintiffs believe that the total number of Class and State-specific subclasses members is at least in the thousands, and are numerous and geographically dispersed across the country. While the exact number and identities of the Class and State-specific subclasses members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, as well as by the notice Class members will receive by virtue of this litigation so that they may self-identify. The disposition of the claims of the Class and State-specific subclasses members in a single class action will provide substantial benefits to all Parties and the Court. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice. The number of persons for whom this action is filed who are citizens of these United States effectively exhausts the membership of the class.

65.    **Commonality and Predominance under Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):** This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

a.    Whether Defendant engaged in the conduct alleged herein;

b.    Whether Defendant knew about the Nose-Dive Defect, including prior to production;

c.      Whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed the defective Boards into the stream of commerce in the United States;

d.      Whether the Boards that are the subject of this complaint are defective such that they are not fit for ordinary consumer use;

e.      Whether Defendant omitted material facts about the quality, durability, usability, and safety of the Boards;

f.      Whether Defendant designed, manufactured, marketed, and distributed the Boards with the Nose-Dive Defect;

g.      Whether Defendant's conduct violates states' consumer protection statutes, and constitutes breach of contract or warranty and fraudulent concealment, as asserted herein;

h.      Whether Plaintiffs and the Sub-Class members overpaid for their Boards at the point of sale; and

i.      Whether Plaintiffs and the Sub-Class members are entitled to damages and other monetary relief and, if so, what amount.

66.      **Typicality under Federal Rule of Civil Procedure 23(a)(3):** Plaintiffs' claims are typical of the Class and State-specific subclasses members' claims because all have been comparably injured through Defendant's wrongful conduct as described above.

67.      **Adequacy of Representation under Federal Rule of Civil Procedure 23(a)(3):** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class and Sub-Class members they seek to represent. Additionally, Plaintiffs have retained counsel with substantial experience in handling complex class action and multi-district litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and Sub-Classes and have the financial resources to do so. The interests of the Class and Sub-Classes will be fairly and adequately protected by Plaintiffs and their counsel.

68.      **Superiority of Class Action under Federal Rule of Civil Procedure 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class

action. The financial detriment suffered by Plaintiffs and the other members of the Class and State-specific subclasses are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant. Accordingly, it would be impracticable for the members of the Class and Subclasses to individually seek redress for Defendant's wrongful conduct. Even if members of the Class and State-specific subclasses could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.    CAUSES OF ACTION

**A.    Claims Brought on Behalf of the Nationwide Class**

### COUNT I

### VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.* THE MAGNUSON-MOSS WARRANTY ACT

69.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

70.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

71.    Future Motion, Inc. is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

72.    The Onewheel electronic skateboards are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

73.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

74.    FM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Boards' implied warranties are covered under 15 U.S.C. § 2301(7).

75.     FM breached these warranties, as described in more detail above. Without limitation, the Onewheel electronic skateboards contain a common Nose-Dive Defect in that the Boards fail to operate as represented by FM.

76.     Plaintiffs and the other Class members have had sufficient direct dealings with either FM or its agents (*e.g.*, dealers, sales representatives, and technical support) to establish privity of contract between FM on one hand, and Plaintiffs and each of the other Class members on the other hand.

77.     Affording FM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

78.     At the time of sale of each Onewheel electronic skateboard, FM knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the skateboard's inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Onewheel electronic skateboard a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

79.     Plaintiffs and the other Class members would suffer economic hardship if they returned their Onewheel electronic skateboard but did not receive the return of all payments made by them. Because FM is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Onewheel electronic skateboard by retaining them.

80.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

81.     Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of the Onewheel electronic skateboard, in an amount to be proven at trial.

**COUNT II**

**BREACH OF CONTRACT**
**(COMMON LAW)**

82. Plaintiffs incorporate by reference all allegations as though fully set forth herein.

83. Plaintiffs assert this Count on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State-specific.

84. Defendant's misrepresentations and omissions alleged herein, including, but not limited to, Defendant's concealment and suppression of material facts concerning the safety, reliability, durability, and quality of the Boards, caused Plaintiffs and the other Class and Subclass members to make their purchases or leases of their Boards.

85. Absent those misrepresentations and omissions, Plaintiffs and the other Class and Subclass members would not have purchased these Boards, would not have purchased these Boards at the prices they paid, and/or would have purchased or leased a different electronic skateboard that did not have the Nose-Dive Defect. Accordingly, Plaintiffs and the other Class and Subclass members overpaid for their Boards and did not receive the benefit of their bargain.

86. Each and every sale of a Board constitutes a contract between Defendant and the purchaser. Defendant breached these contracts by selling or leasing to Plaintiffs and the other Class and Subclass members defective Boards and by misrepresenting or failing to disclose material facts concerning the safety, reliability, durability, and quality of the Boards, and by affirmatively making misleading statements concerning the safety, reliability, durability, and quality of the Boards.

87. As a direct and proximate result of Defendant's breach of contract, Plaintiffs and the Subclass members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**B.**     **Claims Brought on Behalf of the California Subclass.**

## COUNT III

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)

88.     Plaintiffs Raymond Wang and Devon Holt ("Plaintiffs," for purposes of all California Subclass Counts) incorporates by reference all paragraphs as though fully set forth herein.

89.     Plaintiffs bring this Count on behalf of the California Subclass members against Defendant.

90.     California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

91.     In the course of Defendant's business, it willfully failed to disclose and actively concealed that the Onewheel electronic skateboard is prone to sudden stopping or nose-diving, which can cause the rider to be catapulted into the air without warning. Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Onewheel electronic skateboard to function smoothly and safely, without a Nose-Dive Defect. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Onewheel electronic skateboard.

92.     In purchasing the Boards, Plaintiffs and the California Subclass members were deceived by Defendant's failure to disclose the Nose-Dive Defect, and the dangers it poses to the riders.

93.     Plaintiffs and California Subclass members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading. As alleged herein, Defendant engaged in extremely sophisticated methods of deception. Plaintiffs and California Subclass members did not, and could not, unravel Defendant's deception on their own, as the Onewheel electronic skateboard's software calibrations are a deeply

internal component part in the Onewheel electronic skateboard and Plaintiffs and California Subclass members were not aware of the defective nature of the Onewheel electronic skateboard prior to purchase or lease.

94.    The Defendant's actions as set forth above occurred in the conduct of trade or commerce.

95.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

96.    Defendant intentionally and knowingly misrepresented material facts regarding the Boards with intent to mislead Plaintiff and California Subclass.

97.    Defendant knew or should have known that its conduct violated the California UCL.

98.    Defendant owed Plaintiff and California Subclass members a duty to disclose the truth about the Nose-Dive Defect because Defendant:

a.    Possessed exclusive knowledge of the design of the Onewheel electronic skateboard, the calibration of the software, and the risks posed by the Onewheel electronic skateboard;

b.    Intentionally concealed the foregoing from Plaintiffs and the California Subclass; and/or

c.    Made incomplete representations regarding the quality, durability, and safety of the Onewheel electronic skateboard, while purposefully withholding material facts from Plaintiffs and the California Subclass that contradicted these representations.

99.    Due to its specific and superior knowledge regarding the Nose-Dive Defect in the Onewheel electronic skateboard, Defendant's false representations regarding the safety and reliability of the Onewheel electronic skateboard, and Plaintiffs' and California Subclass members' reliance on these material representations, Defendant had a duty to disclose to Plaintiffs and California Subclass members about the Nose-Dive Defect and the dangers posed by this defect. Having volunteered to provide information to Plaintiffs and California Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Onewheel electronic skateboards purchased by Plaintiff and

California Subclass members. Reliability, durability, performance, and safety are material concerns to Onewheel Class members. Defendant represented to Plaintiffs and California Subclass members that they were purchasing Boards so easy to ride that they were a "toy," when in fact the Nose-Dive Defect was unreasonably dangerous and risky, and has already resulted in severe injuries and death.

100.    Defendant's conduct proximately caused injuries to Plaintiffs and California Subclass members.

101.    Plaintiffs and California Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and California Subclass members overpaid for Onewheels and did not receive the benefit of their bargain, and their Onewheels have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

102.    The Onewheel has a safety defect which presents an actual and/or imminent risk to rider safety; specifically, the risk of a sudden stop or nose-dive of the Board, throwing the rider off the Board without warning. Defendant's violations present a continuing risk to Plaintiffs and California Subclass members as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest. Further, even without a safety issue, Plaintiffs and California Subclass members overpaid at the point of sale as these Boards have impaired performance due to the defect.

103.    Plaintiffs and the California Subclass seek monetary relief against Defendant in an amount to be determined at trial. Plaintiffs and the California Subclass also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil mind. Indeed, Defendant carried out despicable conduct with willful and conscious disregard of the rights of others. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

104.    Plaintiffs and the California Subclass also seek attorneys' fees and any other just and proper relief available.

## COUNT IV

### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")
### (CAL. CIV. CODE § 1750, *ET SEQ.*)

105.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

106.    Plaintiffs bring this Count on behalf of the California Subclass members against Defendant.

107.    The Defendant is a "person" under Cal. Civ. Code § 1761(c).

108.    Plaintiffs and California Subclass members are "consumers" as defined by Cal. Civ. Code § 1761(d), who purchased one or more Boards.

109.    The California Legal Remedies Act ("CLRA") prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." Cal. Civ. Code § 1770(a).

110.    In the course of Defendant's business, it willfully failed to disclose and actively concealed that the Onewheel electronic skateboard is prone to sudden stopping or nose-diving, which can cause the rider to be catapulted into the air without warning. Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Onewheel electronic skateboard to function smoothly and safely, without a Nose-Dive Defect. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Onewheel electronic skateboard.

111.    In purchasing the Boards, Plaintiffs and the California Subclass members were deceived by Defendant's failure to disclose the Nose-Dive Defect, and the dangers it poses to the riders.

112.    Plaintiffs and California Subclass members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading. As alleged herein, Defendant engaged in extremely sophisticated methods of deception. Plaintiffs and California Subclass members did not, and could not, unravel Defendant's deception on their own, as the Onewheel electronic skateboard's software calibrations are a deeply internal component part in the Onewheel electronic skateboard and Plaintiffs and California Subclass

members were not aware of the defective nature of the Onewheel electronic skateboard prior to purchase or lease.

113.    The Defendant's actions as set forth above occurred in the conduct of trade or commerce.

114.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

115.    Defendant intentionally and knowingly misrepresented material facts regarding the Boards with intent to mislead Plaintiffs and the California Subclass.

116.    Defendant knew or should have known that its conduct violated the California UCL.

117.    Defendant owed Plaintiffs and California Subclass members a duty to disclose the truth about the Nose-Dive Defect because Defendant:

a.    Possessed exclusive knowledge of the design of the Onewheel electronic skateboard, the calibration of the software, and the risks posed by the Onewheel electronic skateboard;

b.    Intentionally concealed the foregoing from Plaintiffs and the California Subclass; and/or

c.    Made incomplete representations regarding the quality, durability, and safety of the Onewheel electronic skateboard, while purposefully withholding material facts from Plaintiffs and the California Subclass that contradicted these representations.

118.    Due to its specific and superior knowledge regarding the Nose-Dive Defect in the Onewheel electronic skateboard, Defendant's false representations regarding the safety and reliability of the Onewheel electronic skateboard, and Plaintiffs' and California Subclass members' reliance on these material representations, Defendant had a duty to disclose to Plaintiffs and California Subclass members about the Nose-Dive Defect and the dangers posed by this defect. Having volunteered to provide information to Plaintiffs and California Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Onewheel electronic skateboards purchased by Plaintiffs and California Subclass members. Reliability, durability, performance, and safety are material concerns to

Onewheel class members. Defendant represented to Plaintiffs and California Subclass members that they were purchasing boards so easy to ride that they were a "toy," when in fact the Nose-Dive Defect was unreasonably dangerous and risky, and has already resulted in severe injuries and death.

119.    Defendant's conduct proximately caused injuries to Plaintiffs and California Subclass members.

120.    Plaintiffs and California Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiffs and California Subclass members overpaid for Onewheels and did not receive the benefit of their bargain, and their Onewheels have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

121.    The Onewheel has a safety defect which presents an actual and/or imminent risk to rider safety; specifically, the risk of a sudden stop or nose-dive of the Board, throwing the rider off the Board without warning. Defendant's violations present a continuing risk to Plaintiffs and California Subclass members as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest. Further, even without a safety issue, Plaintiffs overpaid at the point of sale as these boards have impaired performance due to the defect.

122.    On or about July 19, 2022, Plaintiffs and California Subclass members sent notice letters to Defendant complying with Cal. Civ. Code § 1782(a), to the extent such notice is required for this Defendant. Because Defendant has failed to remedy its unlawful conduct within the requisite time period, Plaintiffs and the California Subclass seek all damages and relief to which Plaintiffs and California Subclass members are entitled.

123.    Under Cal. Civ. Code § 1780(a), Plaintiffs and California Sub-Class members seek monetary relief against FM for the harm caused by FM's violations of the CLRA as alleged herein.

124.    Under Cal. Civ. Code § 1780(b), Plaintiffs and California Sub-Class members seek an additional award against FM of up to $5,000 for each Plaintiff who qualifies as a "senior citizen" or "disabled person" under the CLRA. FM knew or should have known that their conduct was directed to one or more Plaintiffs or Sub-Class members who are senior citizens or disabled persons. FM's

conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more Plaintiffs or Sub-Class members who are senior citizens or disabled persons are substantially more vulnerable to FM's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from FM's conduct.

125.    Plaintiffs also seek punitive damages against FM because their unlawful conduct constitutes malice, oppression, and fraud under Cal. Civ. Code § 3294.

126.    Plaintiffs and California Sub-Class members seek an order enjoining FM's unfair or deceptive acts or practices, restitution, costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under CLRA.

**COUNT V**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE §§ 2314 AND 10212)**

127.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

128.    Plaintiffs bring this Count individually and on behalf of the California Subclass against the Defendant.

129.    As set forth above, Plaintiffs and California Subclass members have suffered from a defect that existed in the Onewheel electronic skateboards which causes the Boards to suddenly stop or nose-dive without warning. Plaintiffs and California Subclass members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

130.    A warranty that the Boards were in merchantable condition and fit for the ordinary purpose for which the devices are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212. "The core test of merchantability is fitness for the ordinary purpose for which such goods are used. Such fitness is shown if the product is in safe condition and substantially free from defects." *Isip v. Mercedes-Benz, USA, LLC*, 155 Cal. App. 4th 19, 26 (2007); *see also Mexia v. Rinker Coat Co.,*

*Inc.*, 174 Cal. App. 4th 1291 (2009). As demonstrated herein, the Boards are not substantially free from defects; the Boards contain an existing, manifested defect which can cause the Boards to suddenly stop or nose-dive, throwing the rider off the Board at dangerous speeds.

131. Defendant is and was at all times a "merchant" with respect to the Boards under Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of goods under § 2103(1)(d).

132. The Boards are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

133. A warranty that the Boards were in merchantable condition and fit for the ordinary purpose for which the vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

134. The Boards, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which electronic skateboards are used. The Onewheel has a safety defect which presents an actual and/or imminent risk to rider safety; specifically, the risk of a sudden stop or nose-dive of the Board, throwing the rider off the Board without warning.

135. It was reasonable to expect that Plaintiff and California Subclass members may use, consume, or be affected by the defective Boards, regardless of contractual privity with Defendant.

136. The Boards contained an inherent defect that was substantially certain to result in malfunction during the useful life of the product.

137. Plaintiffs and California Subclass members were and are third-party beneficiaries to the Defendant manufacturer's contracts with FM-certified/authorized retailers who sold the Boards to Plaintiffs.[11]

---

[11] *See In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 922 (N.D. Cal. 2018) ("[California law] allow[s] plaintiffs to bring implied warranty claims in the absence of privity if the plaintiff shows that he was a beneficiary to a contract between the defendant and a third party."); *id.* ("Because third party beneficiary status is a matter of contract interpretation, a person seeking to enforce a contract as a third party beneficiary must plead a contract which was made expressly for his [or her] benefit and one in which it clearly appears that he [or she] was a beneficiary." (citations omitted)); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983 (N.D. Cal. 2014) ("[T]here is an exception to the privity requirement that applies when a plaintiff is the intended beneficiary of implied warranties in agreements linking a retailer and a manufacturer." (citations omitted)).

138.   In addition, or in the alternative, Plaintiffs and California Subclass members directly relied upon Defendant's advertising, as alleged above.[12]

139.   Defendant was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the Boards, by letters from Plaintiff's counsel, on behalf of Plaintiff, to Defendant, complaints by Plaintiff or Class members to Defendant either orally or in writing, complaints to FM dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the Boards for repair to dealerships or to intermediate sellers or repair facilities, and/or by the allegations contained in this Complaint.

140.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and California Subclass members have been damaged in an amount to be proven at trial.

## COUNT VI

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. CIV. CODE § 1791, *ET SEQ.*)

141.   Plaintiffs incorporates by reference the paragraphs above as if fully set forth herein.

142.   Boards are "consumer goods" and Plaintiffs and California Subclass members are "buyers" within the meaning of Cal. Civ. Code § 1791. The Defendant is also a "manufacturer," "distributor," or "retail seller" under Cal. Civ. Code § 1791.

143.   The implied warranty of merchantability included with the sale of each Board means that Defendant warranted that each Board would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Boards would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

144.   The Boards would not pass without objection in the electronic skateboard trade because of the defect affecting the Board, which also makes them unfit for the ordinary purpose for which a Board would be used.

---

[12] *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (holding that, for purposes of a breach of implied warranty claim, a Plaintiff need not stand in vertical contractual privity with the defendant when the plaintiff relies on written labels or advertisements of a manufacturer).

145.    The Boards are not adequately labeled because their labeling fails to disclose the defect and risk of nose-diving or sudden stopping, and does not advise the members of the proposed California Subclass of the existence of the issue prior to experiencing the Nose-Dive Defect firsthand.

146.    Defendant's actions have deprived Plaintiffs and the members of the proposed California Subclass of the benefit of their bargains and have caused the Boards to be worth less than what Plaintiffs and other members of the proposed California Subclass paid.

147.    As a direct and proximate result of Defendant's breach of implied warranty, Plaintiffs and members of the proposed California Subclass received goods whose condition substantially impairs their value. Plaintiffs and members of the proposed California Subclass have been damaged by the diminished value of their Boards.

148.    Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and members of the proposed California Subclass are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the Boards or the overpayment or diminution in value of their Boards. They are also entitled to all incidental and consequential damages resulting from Defendant's breach, as well as reasonable attorneys' fees and costs.

**C.    Claims Brought on Behalf of the Florida Subclass.**

**COUNT VII**

**VIOLATIONS OF THE FLORIDA DECEPTIVE AND
UNFAIR TRADE PRACTICES ACT ("FDUTPA"),
(FLA. STAT. ANN. § 501.201, *ET SEQ.*)**

149.    Plaintiff Jerrod Hunter Nichols ("Plaintiff," for purposes of all Florida Subclass Counts) incorporates all paragraphs as though fully set forth herein.

150.    Plaintiff and Florida Subclass members who purchased their vehicles new are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.203(7).

151.    The Defendant engaged in "trade or commerce" within the meaning of Fla. Stat. Ann. § 501.203(8).

152.    The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204(1).

153.    In the course of Defendant's business, it willfully failed to disclose and actively concealed that the Onewheel electronic skateboard is prone to sudden stopping or nose-diving, which can cause the rider to be catapulted into the air without warning. Particularly in light of Defendant's advertising campaign, a reasonable American consumer would expect the Onewheel electronic skateboard to function smoothly and safely, without a Nose-Dive Defect. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Onewheel electronic skateboard.

154.    In purchasing the Boards, Plaintiff and the Florida Subclass members were deceived by Defendant's failure to disclose the Nose-Dive Defect, and the dangers it poses to the riders.

155.    Plaintiff and Florida Subclass members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading. As alleged herein, Defendant engaged in extremely sophisticated methods of deception. Plaintiff and Florida Subclass members did not, and could not, unravel Defendant's deception on their own, as the Onewheel electronic skateboard's software calibrations are a deeply internal component part in the Onewheel electronic skateboard and Plaintiff and Florida Subclass members were not aware of the defective nature of the Onewheel electronic skateboard prior to purchase or lease.

156.    The Defendant's actions as set forth above occurred in the conduct of trade or commerce.

157.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

158.   Defendant intentionally and knowingly misrepresented material facts regarding the Boards with intent to mislead Plaintiff and the Florida Subclass.

159.   Defendant knew or should have known that its conduct violated the FDUTPA.

160.   Defendant owed Plaintiff and Florida Subclass members a duty to disclose the truth about the Nose-Dive Defect because Defendant:

a.     Possessed exclusive knowledge of the design of the Onewheel electronic skateboard, the calibration of the software, and the risks posed by the Onewheel electronic skateboard;

b.     Intentionally concealed the foregoing from Plaintiff and the Florida Subclass; and/or

c.     Made incomplete representations regarding the quality, durability, and safety of the Onewheel electronic skateboard, while purposefully withholding material facts from Plaintiff and the Florida Subclass that contradicted these representations.

161.   Due to its specific and superior knowledge regarding the Nose-Dive Defect in the Onewheel electronic skateboard, Defendant's false representations regarding the safety and reliability of the Onewheel electronic skateboard, and Plaintiff's and Florida Subclass members' reliance on these material representations, Defendant had a duty to disclose to Plaintiff and Florida Subclass members about the Nose-Dive Defect and the dangers posed by this defect. Having volunteered to provide information to Plaintiff and Florida Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Onewheel electronic skateboards purchased by Plaintiff and Florida Subclass members. Reliability, durability, performance, and safety are material concerns to Onewheel class members. Defendant represented to Plaintiff and Florida Subclass members that they were purchasing Boards so easy to ride that they were a "toy," when in fact the Nose-Dive Defect was unreasonably dangerous and risky, and has already resulted in severe injuries and death.

162.   Defendant's conduct proximately caused injuries to Plaintiff and Florida Subclass members.

163. Plaintiff and Florida Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and Florida Subclass members overpaid for Onewheels and did not receive the benefit of their bargain, and their Onewheels have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

164. The Onewheel has a safety defect which presents an actual and/or imminent risk to rider safety; specifically, the risk of a sudden stop or nose-dive of the Board, throwing the rider off the Board without warning. Defendant's violations present a continuing risk to Plaintiff and Florida Subclass members as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest. Further, even without a safety issue, Plaintiff overpaid at the point of sale as these Boards have impaired performance due to the defect.

165. Plaintiff and Florida Subclass members were injured and suffered ascertainable injury in act, and/or actual damages as a proximate result of Defendant's conduct in that Plaintiff and Florida Subclass members overpaid for their Boards, did not get the benefit of their bargain, and their Boards are equipped with a defective and dangerous Nose-Dive Defect. These injuries are the direct and natural consequence of Defendant's representations and omissions.

166. Defendant's violations present a continuing risk to Plaintiff as well as Florida Subclass members.

167. Accordingly, Defendant is liable to Plaintiff and Florida Subclass members for damages in an amount to be proven at trial.

168. On or about July 19, 2022, Plaintiffs and Florida Subclass members sent notice letters to Defendant complying with Fla. Stat. Ann. § 501.201 *et seq.*, to the extent such notice is required for this Defendant. Because Defendant has failed to remedy its unlawful conduct within the requisite time period, Plaintiffs and the Florida Subclass seek all damages and relief to which Plaintiffs and Florida Subclass members are entitled.

## COUNT VIII

### UNJUST ENRICHMENT

169.    Plaintiff incorporates all paragraphs as though fully set forth herein.

170.    Plaintiff brings this Count individually and on behalf of the Florida Subclass against Defendant.

171.    As set forth above, Plaintiff and Florida Subclass members have suffered from a defect that existed in the Onewheel electronic skateboards which causes the Boards to suddenly stop or nose-dive without warning. Plaintiff and Florida Subclass members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

172.    As a result of their wrongful and fraudulent acts and omissions, as set forth herein, pertaining to the defects in the Boards and the concealment thereof, Defendant charged a higher price for the Boards than the Boards' true value and Defendant, therefore, obtained monies that rightfully belong to Plaintiff and Florida Subclass members.

173.    Defendant has benefitted from manufacturing and selling at an unjust profit defective Boards whose value was artificially inflated by Defendant's concealment of the defective nature of the Boards, and false representations related thereto.

174.    Defendant enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and Florida Subclass members, who paid a higher price for their Boards that actually had lower values.

175.    Defendant has received and retained unjust benefits from the Plaintiff and Florida Subclass members, and inequity has resulted.

176.    It would be inequitable and unconscionable for Defendant to retain these wrongfully obtained benefits.

177.    Because Defendant concealed their fraud and deception, Plaintiff and Florida Subclass members were not aware of the true facts concerning the Boards and did not benefit from Defendant's misconduct.

178.    Defendant knowingly accepted and retained the unjust benefits of its fraudulent conduct.

179.     As a result of Defendant's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and Florida Subclass members, in an amount to be proven at trial.

180.     Plaintiff and Florida Subclass members, therefore, seek an order establishing Defendant as a constructive trustee of the profits unjustly obtained, plus interest.

**COUNT IX**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(FLA. STAT. ANN. §§ 672.314 AND 680.212)**

181.     Plaintiff incorporates all paragraphs as though fully set forth herein.

182.     Plaintiff brings this Count individually and on behalf of the Florida Subclass against Defendant.

183.     As set forth above, Plaintiff and Florida Subclass members have suffered from a defect that existed in the Onewheel electronic skateboards which causes the Boards to suddenly stop or nose-dive without warning. Plaintiff and Florida Subclass members are seeking recovery for this manifested defect and any and all consequential damages stemming therefrom.

184.     Defendant was at all times a "merchant" with respect to motor vehicles under Fla. Stat. Ann. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

185.     The Boards are and were at all relevant times "goods" within the meaning of Fla. Stat. Ann. §§ 672.105(1) and 680.1031(1)(h).

186.     A warranty that the Boards were in merchantable condition and fit for the ordinary purpose for which electric skateboards are used is implied by law, pursuant to Fla. Stat. Ann. §§ 672.314 and 680.212.

187.     The Boards, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which the Boards are used. Specifically, the Boards have a safety defect which presents an actual and/or imminent risk to rider safety; specifically, the risk of a sudden stop or nose-dive of the Board, throwing the rider off the Board without warning.

188.     It was reasonable to expect that Plaintiff and Florida Subclass members may use, consume or be affected by the defective Boards.

189.    The Boards contained an inherent defect that was substantially certain to result in malfunction during the useful life of the product.

190.    Plaintiff and Florida Subclass members were and are third-party beneficiaries to the defendant manufacturer's contracts with FM-certified/authorized retailers who sold the Boards to Plaintiff and Florida Subclass members.

191.    In addition, or in the alternative, Plaintiff and Florida Subclass members directly relied upon Defendant's advertising, as alleged above.

192.    Defendant was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Boards, by letters from Plaintiffs' counsel, on behalf of Plaintiffs, to Defendant, complaints by Plaintiff or Florida Subclass members to Defendant either orally or in writing, complaints to FM dealerships, intermediate sellers, or repair facilities either orally or in writing, presentation of the Boards for repair to dealers or to intermediate sellers or repair facilities, countless consumer complaints on the internet regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint. In addition, on or about July 19, 2022, Plaintiffs and Florida Subclass members sent notice letters to Defendant complying with Fla. Stat. Ann. § 672.314 *et seq.*, to the extent such notice is required for this Defendant. Because Defendant has failed to remedy their unlawful conduct within the requisite time period, Plaintiffs and the Florida Subclass seek all damages and relief to which Plaintiffs and Florida Subclass members are entitled.

193.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Florida Subclass members have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully request that the Court enter judgment in their favor and against Future Motion, Inc. as follows:

A.    Certification of the proposed Class and Subclasses, including appointment of Plaintiffs' counsel as Class Counsel;

B.      An order temporarily and permanently enjoining FM from continuing unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Injunctive relief in the form of an adequate recall, free replacement, or Board buy-back program;

D.      An order establishing FM as a constructive trustee over profits wrongfully obtained, plus interest;

E.      Costs, restitution, damages, including punitive damages, exemplary damages and treble damages, and disgorgement in an amount to be determined at trial;

F.      An order requiring FM to pay both pre- and post-judgment interest on any amounts awarded;

G.      An award of costs and attorney's fees; and

H.      Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: September 6, 2022                          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Abby R. Wolf*_____
       Abby R. Wolf (SBN 313049)
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email: abbyw@hbsslaw.com

Steve W. Berman (*pro hac vice forthcoming*)
Jerrod C. Patterson (*pro hac vice forthcoming*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com
Email: jerrodp@hbsslaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN & MORGAN, P.A.

Branden Weber (*pro hac vice forthcoming*)
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Telephone: (407) 420-1414
Facsimile:  (407) 245-3408
bweber@forthepeople.com

*Counsel for Plaintiffs and the Proposed Class*